## Office of Disciplinary Counsel v. Staropoli

Disciplinary Board Docket no. 97 D.B. 2002.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

RASPANTI, *Member,* April 1, 2004—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On August 6, 2002, petitioner, Office of Disciplinary Counsel, filed a petition for discipline against Charles C. Staropoli, respondent. The petition alleged that respondent converted monies belonging to his law firm and made a series of misrepresentations to his firm re-

garding his actions. Respondent filed an answer to petition for discipline on September 23, 2002.

A disciplinary hearing was held on April 17, 2003, before Hearing Committee 1.02 comprised of Chair Roland B. Jarvis, Esquire, Member Sean P. Buggy, Esquire, and Alternate Member Gerard G. Bernhardt Jr., Esquire. Respondent was represented by Alan A. Turner, Esquire. A joint stipulation was admitted into evidence, in which respondent admitted that his conduct violated Rules of Professional Conduct 1.15(a), 1.15(b), 8.4(b), and 8.4(c).

Following the submission of briefs by the parties, the Hearing Committee filed a report on October 27, 2003, finding that respondent violated the Rules of Professional Conduct. Two members of the committee recommended that respondent be suspended for a period of one year and one day. The dissenting member filed his opinion on December 5, 2003, recommending a suspension of six months.

Counsel for respondent withdrew his appearance on November 10, 2003. Respondent filed a brief on exceptions pro se on December 2, 2003, and requested oral argument before the Disciplinary Board. Petitioner filed a brief opposing exceptions on December 17, 2003.

Oral argument was held before a three-member panel of the Disciplinary Board chaired by Marc S. Raspanti, Esquire, with Members Laurence H. Brown, Esquire, and C. Eugene McLaughlin. By prior notice, respondent advised the board he would not appear at the oral argument. Accordingly, the panel relied on the record below and pleadings.

This matter was adjudicated by the Disciplinary Board at the meeting of January 14, 2004.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at 200 North Third Street, Suite 1400, Harrisburg, PA 17101, is invested, pursuant to Pa.R.D.E. 207, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of said Rules of Disciplinary Enforcement.

(2) Respondent was born in 1965 and was admitted to practice law in the Commonwealth in 1992. He resides at 1004 Ryans Run, Boothwyn, Pennsylvania 19061. He is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent assumed voluntary inactive status, effective July 1, 2003, and filed a verified statement of compliance in accordance with Rule 217(e), Pa.R.D.E.

(4) Respondent has no prior history of discipline.

(5) Respondent was an employee of the law firm of Gallagher, Reilly and Lachat P.C. from July 6, 1998 until August 10, 2000.

(6) The Gallagher firm had a written policy that contingent fees earned in cases originated by the firm's associates were to be divided between the firm and the associate in certain percentages. This policy was sent to new associates in a form letter at the time of hire.

(7) Respondent was aware of the firm's policy pertaining to the division of fees.

(8) While respondent was an employee of the Gallagher firm, he represented Marie Colleen Callen in connection with her claims against Andrey Karpov and Progressive Northern Insurance Company, arising out of an automobile accident.

(9) Respondent opened a file at the Gallagher firm in connection with his representation of Ms. Callen.

(10) In May 2000, respondent settled Ms. Callen's claim for $9,000.

(11) Respondent did not advise the Gallagher firm that he had settled the Callen claim.

(12) On May 3, 2000, Progressive issued a settlement draft in the amount of $9,000 to respondent and Ms. Callen.

(13) Respondent did not advise the Gallagher firm that he had received the settlement draft.

(14) Respondent did not deposit the settlement draft into the Gallagher firm's escrow account.

(15) On May 9, 2000, respondent deposited the settlement draft in an account in his name at PNC Bank.

(16) In May 2000, respondent distributed approximately $6,000 to Ms. Callen as her portion of the settlement.

(17) Ms. Callen received all funds to which she was entitled.

(18) Respondent retained the remaining $3,000 as his attorney's fee.

(19) Respondent did not promptly pay the Gallagher firm its portion of the settlement.

(20) Respondent closed the Callen file without advising anyone at the Gallagher firm that he had settled Ms. Callen's case.

(21) Respondent left the employ of the Gallagher firm in August 2000.

(22) The Gallagher firm learned that the *Callen* case had settled when it received a letter dated March 5, 2001, from Richard E. Albertson, senior claims representative at Progressive, stating that he had not yet received an executed release in the matter.

(23) By letter dated May 10, 2001, Maureen Rowan, Esquire, of the Gallagher firm, advised respondent that:

(a) the Gallagher firm "had recently learned that on or about May 10, 2000, [he] settled the case of *Callen v. Karpov* for $9,000;"

(b) "despite the clear terms of [his] employment agreement, [respondent] did not advise [the Gallagher firm] of the settlement nor did [he] give the settlement check to Kathy Dolan in order that the firm could be compensated for its portion of the fee;" and

(c) she would be "reporting [respondent's] actions with respect to the handling of the Callen settlement to the appropriate authorities in addition to the disciplinary boards of the State of Pennsylvania and the State of Delaware." (Exhibit A.)

(24) By letter dated May 10, 2001, respondent advised Attorney Rowan that he would mail her "a check in the amount of $2,000, which would represent two-thirds of the Callen fee, assuming the fee was one-third," and further that "Ms. Callen was a friend and she was not charged this fee . . . ." (Exhibit B.)

(25) Respondent made a misrepresentation to Attorney Rowan, as Ms. Callen had been charged a one-third fee.

(26) By letter dated May 10, 2001, respondent advised Attorney Rowan that the check that he was transmitting therewith in the amount of $2,000 "represented two-thirds of a one-third fee," and that respondent charged Ms. Callen "far less" than one-third because of who she is. (Exhibit C.)

(27) Respondent's statement that he charged Ms. Callen far less than a one-third fee is not true.

(28) By letter misdated April 14, 2001, to Maureen Rowan, Esquire, Paul Gallagher, Esquire, and Jim Egbert, Esquire, respondent enclosed a second check for the *Callen* case in the amount of $1,400 to replace the $2,000 check he forwarded the previous week.

(29) In this letter, respondent advised that $1,400 was "the more appropriate amount," and he stated that he "did end up charging Colleen $1,500 of the $9,000 settlement as a fee."

(30) Respondent's statement that he charged Ms. Callen $1,500 as a fee was not true, as he charged her $3,000.

(31) The Gallagher firm did not cash either the $2,000 check or the $1,400 check. The firm was in the process of dissolving and elected not to cash the checks at that time.

(32) By letter dated May 19, 2001, respondent advised Ms. Rowan, Mr. Gallagher, and Mr. Egbert that he would report his conduct to the Disciplinary Board if the firm believed it was under a mandatory obligation to make such a report.

(33) By letter dated May 23, 2001, Attorney Rowan informed respondent that the lawyers at her firm believed they were under an obligation to report respondent's actions.

(34) By letter dated June 15, 2001, respondent reported to the Disciplinary Board his actions in connection with the *Callen* case.

(35) Although respondent is licensed in New Jersey and Delaware, he did not report himself to the disciplinary authorities in those states.

(36) At the disciplinary hearing, respondent stated his intention of notifying the Delaware authorities and resigning from the bar of New Jersey.

(37) Respondent made restitution in the amount of $2,360 to the Gallagher firm in April of 2003. This amount represents the monies owed plus interest.

(38) Four character witnesses testified on behalf of respondent. Two of these witnesses were Frederick Lachat, Esquire, and Thomas Reilly, Esquire, both of whom were named partners at the Gallagher firm at the time of respondent's misconduct.

(39) Attorney Lachat had occasion to work with respondent on case matters. He found respondent to be very professional and competent and unquestionably a good lawyer.

(40) Attorney Reilly worked with respondent from time to time during respondent's tenure at the Gallagher firm. He believed respondent had a good work ethic and was an effective lawyer with a good understanding of defense practice. Mr. Reilly had a good opinion of respondent's truthfulness and honesty.

(41) Respondent expressed sincere remorse for his misconduct and stated that he has no real explanation for what he did. Respondent feels personally embarrassed and professionally humiliated by his actions.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 1.15(a)—A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.

(2) R.P.C. 1.15(b)—Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. A lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive.

(3) R.P.C. 8.4(b)—It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

(4) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## IV. DISCUSSION

This matter is before the Disciplinary Board on a petition for discipline charging respondent with violations of the Rules of Professional Conduct based on his improper handling of funds belonging to his former law

firm. Respondent stipulated to the facts of the matter and to violations of Rules 1.15(a), 1.15(b), 8.4(b) and 8.4(c).

Respondent admits that he failed to promptly turn over to his former law firm funds belonging to the firm. He was aware of his obligation to turn over a fee of $2,000 to the Gallagher firm, representing the firm's portion of the Callen settlement. Instead, respondent opened an account at PNC Bank in his name, deposited the Callen settlement, and thereafter failed to notify the Gallagher firm of the settlement or disburse their portion of the fee. There is no question that respondent's client promptly received her full portion of the settlement. However, respondent failed to fulfill his professional obligations to his former law firm. Respondent could offer no explanation for his actions.

Compounding respondent's problems were a series of misrepresentations he made in letters sent to his former firm. Upon learning of the settlement of the Callen matter from the insurance company, the firm by letter advised respondent of its claim for their portion of the fee. In the letter of May 10, 2001, respondent informed the firm he would send a check in the amount of $2,000, but also added that he had not charged Ms. Callen a fee, as she was a friend. In a second letter dated May 10, 2001, respondent stated he charged Ms. Callen far less than a one-third fee. Finally, in a third letter, which was misdated April 14, 2001, respondent enclosed a check in the amount of $1,400 to replace the $2,000 check he sent earlier and advised the firm that he only charged Ms. Callen $1,500 of the $9,000 settlement as her fee. None of these statements were true, as respondent took a one-third fee from Ms. Callen's settlement.

Respondent did not intend to deny to his former firm what occurred. When he received the first letter from the Gallagher firm, he testified that he panicked and thought that the Callen matter was a non-fee case. He did not have the Callen file in front of him when he wrote the letters to the Gallagher firm. He later realized that in fact it was a fee case, but this does not excuse his misstatements to the Gallagher firm.

Respondent presented the testimony of four character witnesses. Most persuasive was the testimony of Frederick Lachat and Thomas Reilly, who were named partners in the Gallagher firm at the time respondent was an associate. Both Mr. Lachat and Mr. Reilly testified clearly that respondent was a good lawyer with a good reputation and both were surprised by respondent's misconduct. That two lawyers from the very firm whose funds were misappropriated took the time to testify on respondent's behalf as to his good character is impressive.

The Hearing Committee recommended that respondent be suspended for one year and one day, based on the seriousness of respondent's misconduct. Prior case law suggests that where an attorney misappropriates monies from his or her law firm, public discipline is necessary to address such misconduct.

In the matter of *In re Anonymous No. 115 D.B. 2000,* no. 718 disciplinary docket no. 3 (Pa. Jan. 31, 2002), an attorney converted a single check in the amount of $5,895.23 which belonged to his law firm. Office of Disciplinary Counsel posited that a suspension of one year and one day was required. The board initially noted that the fact that this attorney converted money from his law firm, rather than from a client, was of no moment be-

cause the conversion of law firm funds was no less egregious than the conversion of client funds. The board examined a series of decisions regarding mishandling of law firm funds and determined that there was no formulaic requirement in those cases that a suspension of one year and one day be imposed. The board determined that the attorney's prior unblemished record, his strong character testimony, including testimony from partners at his former law firm, and his cooperation with Office of Disciplinary Counsel weighed favorably for a one-year suspension.

While the board agrees that respondent's misconduct was serious, the board is of the opinion that the totality of the facts and circumstances present in this case warrant a suspension of six months.

Respondent showed a significant lack of judgment in his actions and deserves suspension, but the board does not perceive that respondent is so unfit that he must petition for reinstatement to prove his fitness subsequent to his suspension. Respondent's handling of Ms. Callen's case was by all accounts done properly.

Respondent does not pose a threat to clients or the general public. Respondent has never been the subject of discipline prior to this matter. He presented credible and persuasive witnesses and showed remorse. He made restitution to the Gallagher firm with interest, he reported his misconduct to the Disciplinary Board, cooperated with Office of Disciplinary Counsel and, by letter dated June 23, 2003, requested that he be transferred to inactive status, which was done effective July 1, 2003.

For the reasons as set forth above, the board recommends that respondent be suspended for a period of six months.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Charles C. Staropoli, be suspended from the practice of law for a period of six months retroactive to July 1, 2003.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Members Peck and Newman did not participate in the January 14, 2004 adjudication.

## ORDER

And now, July 8, 2004, upon consideration of the report and recommendations of the Disciplinary Board dated April 1, 2004, it is hereby ordered that Charles C. Staropoli be and he is suspended from the bar of this Commonwealth for a period of one year retroactive to July 1, 2003, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

## ORDER

And now, August 12, 2004, on certification by the Disciplinary Board that the respondent, Charles C. Staropoli, who was suspended by order of this court dated July 8, 2004, for a period of one year retroactive to July 1, 2003, has filed a verified statement showing compliance with all the terms and conditions of the order of suspension and Rule 217, Pa.R.D.E., and there being no other outstanding order of suspension or disbarment, Charles C. Staropoli is hereby reinstated to active status, effective immediately.