2006 WY 53

**BOARD OF PROFESSIONAL RESPONSIBILITY, Wyoming State Bar, Petitioner,**

v.

**Timothy John BLATT, Respondent.**

**No. D–06–1.**

Supreme Court of Wyoming.

May 3, 2006.

ORDER SUSPENDING ATTORNEY FROM THE PRACTICE OF LAW

**This matter** came before the Court upon a "Report and Recommendation for Reciprocal Discipline," filed herein February 3, 2006, by the Board of Professional Responsibility for the Wyoming State Bar. After a careful review of the Board of Professional Responsibility's Report and Recommendation for Reciprocal Discipline, the materials attached thereto, the Recommendation for Reciprocal Discipline, the Affidavit of Costs and Expenses, Respondent's Response to Affidavit of Costs and Expenses, and the file, this Court finds that the Report and Recommendation for Reciprocal Discipline should be approved, confirmed and adopted by the Court; and that the Respondent, Timothy John Blatt, should be suspended from the practice of law for a period of thirty (30) days. It is, therefore,

**ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Reciprocal Discipline, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

**ADJUDGED AND ORDERED** that, as a result of the conduct set forth in the Report and Recommendation for Reciprocal Discipline, Respondent Timothy John Blatt shall be, and hereby is, suspended from the practice of law for a period of thirty (30) days beginning May 8, 2006; and it is further

**ORDERED** that, pursuant to Rule 26 of the Disciplinary Code for the Wyoming State Bar, Timothy John Blatt shall reimburse the Wyoming State Bar the amount of $2,314.05, representing the costs incurred in handling this matter, as well as pay an administrative fee of $500.00, by paying the amount of $2,814.05 to the Clerk of the Board of Professional Responsibility, on or before June 30, 2006; and it is further

**ORDERED** that, pursuant to Rule 4(c) of the Disciplinary Code for the Wyoming State Bar, this Order Suspending Attorney from the Practice of Law, along with the incorporated Report and Recommendation for Reciprocal Discipline, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

**ORDERED** that the Clerk of this Court shall docket this Order Suspending Attorney from the Practice of Law, along with the Report and Recommendation for Reciprocal Discipline, as a matter coming regularly before this Court as a public record; and it is further

**ORDERED** that the Clerk of this Court transmit a copy of this Order Suspending Attorney from the Practice of Law to the members of the Board of Professional Responsibility, and the clerks of the appropriate courts of the State of Wyoming.

**DATED** this 2nd day of May, 2006.

**BY THE COURT:**

/s/ William U. Hill
**WILLIAM U. HILL**
**Chief Justice**

BEFORE THE BOARD OF PROFESSIONAL RESPONSIBILITY WYOMING STATE BAR STATE OF WYOMING

In the matter of Timothy John Blatt, WSB Attorney No. 6–3517, Respondent.

No. 2005-27.

**REPORT AND RECOMMENDATION FOR RECIPROCAL DISCIPLINE**

**A. Proceedings**

On October 3, 2005, pursuant to Section 20(a) of the Disciplinary Code, Bar Counsel made a recommendation for reciprocal disci-

pline to the Board of Professional Responsibility (hereafter the "Board"). Specifically, Bar Counsel requested that the Board report and recommend that the Wyoming Supreme Court impose the same disciplinary sanction on Respondent Timothy John Blatt (hereafter "Respondent") as imposed by the Supreme Court of Pennsylvania, which is a six (6) month suspension from the practice of law. Bar Counsel also recommended that the administrative fee and all costs of this matter incurred in Wyoming be assessed against Respondent. The basis for the recommendation of Bar Counsel was the admissions and stipulations made by Respondent in the Pennsylvania proceedings as set forth in the Joint Petition in Support of Discipline on Consent, Respondent's Affidavit, and the September 8, 2005 Order of the Supreme Court of Pennsylvania imposing a disciplinary suspension of six months. A copy of the Joint Petition, Affidavit and Order are attached as Exhibit A.

The Supreme Court of Pennsylvania imposed the disciplinary suspension on findings that Respondent admitted his conduct violated Pennsylvania Rules of Professional Conduct 1.3 (not acting with reasonable diligence and promptness in representing a client), 1.15(a) (not holding funds of third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property), 1.15(b) (not promptly notifying a third person upon the receipt of funds in which the third person has an interest and not promptly delivering to the third person any funds that the third parson is entitled to receive), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

On October 3, 2005, pursuant to Section 20(b) of the Disciplinary Code, the Board issued its Order To Show Cause why the Board should not adopt the recommendation of Bar Counsel. A hearing on the Order to Show Cause was held before the Board on January 17, 2005. A quorum of the Board was present, including the Chair and Board Members Richard Honaker, William Twichell, Francis Stevens, Devon Coleman and non-lawyer member Duane Toro. The show cause hearing was conducted in accordance with Section 20(b) of the Disciplinary Code. Under Section 20(b), Respondent has the burden of proof by a preponderance of the evidence. Upon service of this Report and Recommendation, Respondent may file a response with the Supreme Court pursuant to Sections 20(c) and 21(f) of the Disciplinary Code.

### B. Findings and Conclusions

At the hearing on the Order to Show Cause, respondent presented evidence in the form of testimony and documents. Respondent testified on his own behalf. Park County Attorney Bryan Skoric, Respondent's employer, also testified. A testament in the form of correspondence from Samuel P. Krone, the President of the Cody City Council and Respondent's former employer, was received in evidence on stipulation by Bar Counsel. Credible documentary evidence was received which corroborated Respondent's testimony on his own behalf.

While the admissions made by Respondent in the Pennsylvania disciplinary proceedings reflect, at a minimum, serious flaws in judgment by Respondent, the sum and substance of the events which led to the disciplinary proceedings in Pennsylvania arise out of a bitter financial dispute between Respondent and the partners at his former law firm, Douglas & Joseph. Respondent began his employment at Douglas & Joseph in October of 2001. Prior to accepting a position at Douglas & Joseph, Respondent had an existing practice that included a contingent fee case which had essentially settled before he began his employment with Douglas & Joseph, but for which the settlement funds were not distributed until shortly after his employment. The credible testimony of Respondent established that he asked his new employer if the subject settlement proceeds could be run through the Douglas & Joseph client trust account so that the Respondent could receive a contingent fee of $5,600.00, and the remaining agreed-upon sums could be distributed to the Client. James Douglas, one of the firm's partners, agreed with this proposal.

When respondent inquired about receiving his contingent fee, Mr. Douglas advised that

Respondent would not be allowed to receive the money, and that it would need to "stay in the account" until the partners at Douglas and Joseph could more accurately assess Respondent's revenue performance. Respondent was disappointed, but trusted that the subject fee would eventually be distributed to him. He voiced his concern and need for assurance that he would eventually be paid, and received such assurances.

Over the course of Respondent's ensuing employment with Douglas & Joseph, additional funds that Respondent was due were withheld. By the summer of 2003, Respondent had concluded that Mr. Douglas could not be trusted with respect to assurances in connection with Respondent's compensation, or with respect to fees earned on the contingent matter he brought with him to the firm in 2001. On July 23, 2003, Respondent accepted a position under the supervision of Steven R. Cranfill, Cody City Attorney, in Cody, Wyoming, having passed the Wyoming Bar prior to that time. Prior to leaving the firm, Respondent confronted Mr. Douglas about the funds he felt he was entitled to and not paid. He specifically told Mr. Douglas that he planned to take certain of the files he had been working on with him and finish them up to recover the compensation he was owed. Admittedly, and as set forth in the testimony of Respondent at the hearing before the Board, Respondent made very poor choices in how he decided to handle the dispute with his former firm. He recognizes that he should have not resorted to self help, and should instead have availed himself to legal process.

By the time the Pennsylvania complaints had been filed against Respondent, he was already working for the City of Cody, and had insufficient funds to travel back to Pennsylvania to fully contest the allegations. He had a young family and a new job, and believed that it would be more practical to contest the possible reciprocal disciplinary proceedings in Wyoming rather than contest the Pennsylvania charges. It is for this reason Respondent consented to the disciplinary action in Pennsylvania. Of significance to the Board was the fact that after it became known that Respondent would consent to disciplinary action by the Pennsylvania Supreme Court, Respondent received a check dated June 16, 2005, drawn on the account of Douglas & Joseph, Account No. 196401, in the amount of Nine thousand three hundred ninety three and 78/100 Dollars ($9,393.78), payable to Timothy Blatt. Respondent received no explanation or other accounting concerning the source or amount of the funds. It would appear that this evidence corroborates Respondent's position that his former employer had wrongfully withheld compensation payments as Respondent alleges, and delayed making restitution until satisfied that Respondent's license to practice law in Pennsylvania would be suspended. There is no indication that, before imposing discipline, the Pennsylvania Supreme Court was made aware that Douglas & Joseph had in effect acknowledged its own misconduct in the matter by transmitting the $9,398.78 check to Respondent. Also, prior to returning the funds to Respondent, Douglas & Joseph sought criminal charges against Respondent, but the prosecutor declined to file any charges, determining that the facts indicated a civil dispute between the parties.

Respondent's six month suspension by the Pennsylvania Supreme Court has served its purpose. Respondent has suffered the shame and humility of being punished for the exercise of very poor judgment. Respondent has fully acknowledged his poor decisions, and has made full restitution as required by the Pennsylvania Supreme Court. It was significant to the Board that Respondent did not relocate to Wyoming to avoid prosecution or punishment. Rather, he planned the relocation to Wyoming before the events that led to the Pennsylvania disciplinary proceedings occurred. Of additional significance to the Board was the testimony of Park County Attorney Bryan Skoric, who presented compelling and credible character testimony concerning the performance of Respondent in his current job as Deputy in the Park County Attorney's Office. Respondent has no past history of judgment lapses in connection with the ethical practice of law. He is repentant and ashamed of his behavior that led to the Pennsylvania disciplinary proceedings.

Respondent's former employer, Samuel P. Krone, echoed the sentiments of Mr. Skoric: "I have known [Respondent] for three years. I have witnessed how he has conducted himself as an attorney and a person. I first met [Respondent] as a client, when he served as Deputy City Attorney representing the Cody City Council, when he served as Deputy City Attorney representing the City of Cody. He did an outstanding job representing the City of Cody. I now work with [Respondent] on a daily basis as a Deputy Park County Attorney. I can say without hesitation that [Respondent] is a man of integrity and honor. [Respondent] is ethical, courteous and highly professional as an attorney. I have seen him time and time again do the right thing, both as a client and a colleague. I trust [Respondent] implicitly."

Respondent's current employer, Park County Attorney Bryan Skoric, when questioned by the Board, testified that he intended to seek the permission of the Park County Commissioner's to be allowed to continue Respondent's employment, even through a period of suspension if possible, so that he may return to his position as a Deputy Park County Attorney. Mr. Skoric's testimony, as an elected official, is compelling. Mr. Skoric also testified that his office would be overburdened and understaffed if Respondent is suspended from practicing law.

In summary, the Board finds that Respondent has carried his burden of proof by a preponderance of the evidence and has shown cause why a reciprocal disciplinary suspension of six months should not be recommended. This finding is based on the testimony and documentary evidence presented to the Board at the hearing held on January 17, 2006.

### C. Recommendation For Discipline

While the Board finds that Respondent has carried his burden of proof to show cause why a reciprocal suspension of six months should not be recommended, it is the conclusion of the Board that neither a private or public reprimand would be appropriate given the facial seriousness of the stipulated misconduct by Respondent. Therefore, it is the unanimous recommendation of the Board that Respondent be suspended from the practice of law for a period of not more than thirty (30) days by order of the Court. The Board also recommends that the administrative fee and all costs of this matter incurred by the Wyoming State Bar be assessed against Respondent.

DATED this 30th day of January, 2006. ·

/s/ Joe M. Teig
Joe M. Teig, Chair

## EXHIBIT A

### BEFORE THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA

Office of Disciplinary Counsel, Petitioner

v.

Timothy John Blatt, Respondent

No. 54 DB 2005

(Complaint File #C4-03-1027)

Attorney Registration No. 56202

(Out of State)

*JOINT PETITION IN SUPPORT OF DISCIPLINE ON CONSENT UNDER RULE 215(d), Pa.R.D.E*

Petitioner, Office of Disciplinary Counsel, by Paul J. Killion, Chief Disciplinary Counsel, and Mark G. Weitzman, Disciplinary Counsel, and Respondent, Timothy John Blatt, file this Joint Petition in Support Of Discipline On Consent Under Rule 215(d) of the Pennsylvania Rules of Disciplinary Enforcement and respectfully represent that:

1. Respondent, Timothy John Blatt, was born in 1964 and was admitted to practice law in the Commonwealth of Pennsylvania on November 17, 1989. Respondent was transferred to voluntary inactive status on July 1, 2004.

2. Respondent's attorney registration mailing address is Law Office of Steven Cranfill, P.C., 1421 Rumsey Avenue, Box 3009, Cody, WY 82414. Respondent was admitted to practice law in the State of Wyoming on April 14, 2003.

3. Petitioner filed a three-charge Petition for Discipline against Respondent with the Secretary of the Disciplinary Board on April 25, 2005. Respondent was served with a copy of that Petition on May 6, 2005. Respondent filed an Answer to the Petition with the Secretary of the Disciplinary Board on May 23, 2005.

## SPECIFIC FACTUAL ADMISSIONS AND RULES OF PROFESSIONAL CONDUCT VIOLATED

4. Respondent hereby admits that the following factual allegations in that Petition for Discipline are true and correct and that he violated the charged Rules of Professional Conduct.

5. On October 1, 2001, Respondent began employment as an attorney with the law firm of Joseph & Douglas (hereafter, the law firm) located in Hermitage, Mercer County, Pennsylvania, with a base salary and benefits.

6. On October 19, 2001, Amy Sewinsky was involved in an automobile accident. She then hired the law firm to represent her on a contingent fee basis. Respondent and James Douglas, one of the law firm's three partners, worked on the Sewinsky case.

7. By a Memorandum dated June 26, 2003, Respondent requested that the law firm's three partners accept the Memorandum as written confirmation of his resignation from the law firm as he was moving to Wyoming on July 15, 2003. The law firm's partners accepted Respondent's resignation.

8. Respondent's employment at the law firm ended on July 15, 2003 but he did not move to Wyoming until late July 2003.

9. On July 17, 2003, Mr. Douglas and Ms. Sewinsky met with an insurance adjustor, at which time it was formally agreed that Ms. Sewinsky's claim would be settled for $9,000.

10. After Respondent ended his employment with the law firm, he took with him several client files belonging to the law firm without any of the partners' knowledge and consent, including the file for Ms. Sewinsky's personal injury action.

11. On July 18, 2003, Respondent went to the adjustor's office and obtained the settlement check for $9,000. The check was made payable to Respondent and Ms. Sewinsky. Respondent did not inform the adjustor that he was no longer employed at the law firm.

12. When Respondent received the $9,000 check, he knew that the check proceeds of $9,000 should be deposited into the law firm's trust account as he was a salaried employee of the law firm.

13. On July 19, 2003, Ms. Sewinsky met with Respondent and had her sign her name on the back of the settlement check as her endorsement. Respondent then gave Ms. Sewinsky a check for $5,777 drawn on his personal checking account, and told her that he deducted $3,000 for legal fees and $233 for advanced costs from the $9,000 settlement proceeds.

14. Respondent did not then forward to the law firm the remaining $3,233 due the law firm from the $9,000 proceeds. Instead, Respondent deposited the check proceeds of $9,000 into his personal checking account and used the proceeds for his own personal purposes.

15. On July 28, 2003, Respondent acknowledged to Mr. Douglas that he kept the amount of legal fees and costs due the law firm.

16. On July 31, 2003, Respondent agreed to return to the law firm the files he had taken from the law firm but did not commit to return the $3,233 owed to the law firm from the Sewinsky settlement.

17. On about August 4, 2003, Respondent returned three files to the law firm but did not return the Sewinsky file.

18. On about September 10, 2003, Respondent sent the law firm a check for $2,000, annotated "Sewinsky," dated October 9, 2003 and drawn on his personal checking account at Greenville Savings Bank.

19. Thereafter, Respondent did not provide the law firm with the remaining $1,223 still owed to the law firm from the Sewinsky settlement proceeds and did not return the Sewinsky file to the law firm.

20. Respondent admits that by his conduct as described in paragraphs 5 through 19 above, he violated Rules of Professional Conduct 1.15(a) (not holding property of third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property), 1.15(b) (not promptly notifying a third person upon the receipt of funds in which the third person has an interest and not promptly delivering to the third person any funds that the third person is entitled to receive), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

21. In the middle of May 2003, William Morris contacted the law firm about representation after he was denied unemployment compensation benefits. Respondent told Mr. Morris that he would charge him a fee of $500 for representing him at the unemployment compensation hearing.

22. Respondent represented Mr. Morris at a June 12, 2003 unemployment compensation hearing and, after the hearing, Mr. Morris gave Respondent a check in the amount of $500 and annotated "For Attorney Fee."

23. When Respondent received the $500 check from Mr. Morris, he knew that the check proceeds of $500 should be deposited into the law firm's trust account as he was a salaried employee of the law firm. Instead, Respondent endorsed the check, negotiated the check, and used the $500 in cash for his own personal purposes.

24. Respondent did not notify the law firm that he received the $500 check from Mr. Morris.

25. When Mr. Morris received notice that he had been denied unemployment compensation benefits, he contacted Respondent and he agreed to represent Mr. Morris in filing an appeal on his behalf.

26. During a telephone conversation with Mr. Morris the next day, Respondent represented to him that he already started the paperwork for filing the appeal.

27. Respondent did not take action to file the unemployment compensation appeal on behalf of Mr. Morris.

28. Thereafter, on July 8, 2003, Respondent prepared a Memorandum for the Morris case, which stated that "this case is closed, no outstanding fees owed."

29. In about late July 2003, Mr. Morris telephoned Respondent at the law firm and was told that Respondent had left the law firm's employment and moved to Wyoming. Mr. Morris was told that law firm records reflected that his case had been closed and he had not retained the law firm to represent him.

30. On about July 28, 2003, Respondent misrepresented to Mr. Douglas that he had filed the appeal and a brief on behalf of Mr. Morris and that he gave the law firm a check from Mr. Morris for legal fees for that case.

31. Respondent then sent Mr. Morris a check in the amount of $500, drawn on his personal checking account and annotated "fee refund." However, Mr. Morris was not due a refund of the $500, as the law firm was entitled to those funds as fees earned by Respondent for representing Mr. Morris at the unemployment compensation hearing.

32. Respondent sent Mr. Morris a handwritten letter with the check, in which he misrepresented to Mr. Morris that he had overlooked his appeal, he neglected to open a file on Mr. Morris' case, and he had placed the $500 check in his pocket and his wife found it and deposited it, thinking it was from one of Respondent's tenants, and, therefore, no fee was recorded at the law firm which would have caused the file to be opened and the appeal placed on his schedule.

33. Respondent admits that by his conduct as described in paragraphs 21 through 32 above, he violated Rules of Professional Conduct 1.3 (not acting with reasonable diligence and promptness in representing a client), 1.15(a) (not holding funds of third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property), 1.15(b) (not promptly notifying a third person upon the receipt of funds in which the third person has an interest and not promptly delivering to the third person any funds that the third person is entitled to receive), and 8.4(c) (en-

gaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

34. On June 3, 2003, Respondent met with Anthony Pollock and his fiancée, at which time Respondent agreed to represent Mr. Pollock regarding criminal charges that had been filed against him.

35. At that time, Mr. Pollock's fiancée gave Respondent $2,000 in cash and, upon her request, Respondent provided her with a receipt from the law firm's receipt book acknowledging that he had received the $2,000 in cash.

36. Respondent then removed the carbon copy of the receipt from the law firm's receipt book.

37. At the time Respondent received the $2,000 in cash, he knew that the $2,000 should be deposited into the law firm's trust account as he was a salaried employee of the law firm. Instead, Respondent gave the law firm's bookkeeper $1,000 in cash and misrepresented to her that that was all the funds he had received on behalf of Mr. Pollock. Respondent kept the remaining $1,000.

38. Based upon that misrepresentation, the bookkeeper made an entry in the law firm's computer system reflecting that $1,000 was received on behalf of Mr. Pollock.

39. Respondent represented Mr. Pollock at a June 12, 2003 preliminary hearing.

40. In early September 2003, several weeks after Respondent had terminated his employment with the law firm and moved to Wyoming, Respondent sent a money order for $1,000 to a lawyer he believed was representing Mr. Pollock in his criminal case. Those funds were ultimately paid to Mr. Pollock's lawyer.

41. Respondent admits that by his conduct as described in paragraphs 34 through 40 above, he violated Rules of Professional Conduct 1.15(a) (not holding funds of third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property) and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

## SPECIFIC JOINT RECOMMENDATION FOR DISCIPLINE

42. Petitioner and Respondent jointly recommend that the appropriate discipline for Respondent's admitted misconduct is a suspension from the practice of law for a period of six (6) months.

43. Respondent hereby consents to that discipline being imposed upon him by the Supreme Court of Pennsylvania. Attached to this Petition is Respondent's executed Affidavit required by Rule 215(d), Pa.R.D.E., stating that he consents to the recommended discipline and including the mandatory acknowledgements contained in Rule 215(d)(1) through (4), Pa.R.D.E.

44. In support of Petitioner and Respondent's joint recommendation, it is respectfully submitted that:

(a) There are several mitigating circumstances:

(i) Respondent has admitted engaging in misconduct and violating the charged Rules of Professional Conduct;

(ii) Respondent has cooperated with Petitioner, as is evident by Respondent's admissions herein and his consent to receiving a six-month suspension;

(iii) He is remorseful for and embarrassed by his misconduct and understands he should be disciplined, as is evident by his consent to receiving a six-month suspension; and,

(iv) He has no prior disciplinary history;

(b) Respondent is aware that if he is suspended from the practice of law in Pennsylvania, he may be subject to the imposition of reciprocal identical or comparable discipline in Wyoming where he currently resides and practices law;

(c) Respondent has no present intent to return to Pennsylvania and practice law; and,

(d) Respondent has agreed as conditions to receiving the six-month suspension to:

(i) Make restitution to the law firm for the remaining $1,233 owed to the law firm from the Sewinsky settlement proceeds and the $500 owed to the law firm

for the legal fees paid to Respondent by Mr. Morris; and,

(ii) Return the Sewinsky file to the law firm.

45. Respondent admitted misconduct includes misappropriating $3,733 in fees and costs due the law firm, not promptly informing the law firm of his receipt of funds owed to the law firm, not promptly delivering these funds to the law firm, misrepresentations to the law firm partners as to his having provided fees to the law firm and as to the status of a client's appeal, a misrepresentation to the client as to why he did not file the appeal, misrepresentations to the law firm's bookkeeper as to the amount of funds received as fees from a client, and dishonest and deceitful conduct in removing the carbon copy of a receipt for $2,000 from the law firm's receipt book.

46. A six-month suspension is within the range of public discipline imposed in similar Pennsylvania disciplinary cases involving lawyers who have misused funds belonging to a law firm and related misconduct.

47. In *Office of Disciplinary Counsel v. Muir*, No. 79 DB 2002, No. 891 Disciplinary Docket No. 3 (2004) (an unreported case), the lawyer was suspended for three months. While employed by a law firm, the lawyer received $2,812 from four clients for legal fees due the law firm. On each occasion, she did not promptly inform the law firm that she had received the funds and did not timely provide the funds to the law firm. She later gave cash to the law firm's bookkeeper to repay the funds she had received. The lawyer misrepresented to a law partner that she did not remember what had occurred concerning a check for $500 that she had endorsed and used the proceeds for her own purposes.

In its Report, the Disciplinary Board found that the most egregious conduct was the lawyer's admitted personal use of the check proceeds of $500. The Board did not find that the lawyer misused the remaining funds she had received in cash. The Board found that the lawyer presented favorable mitigating circumstances. She testified she was remorseful and ashamed of her conduct, she presented strong character testimony and she also demonstrated positive changes in her new law practice.

The Board stated that while there is no per se discipline in Pennsylvania, the conversion of funds is a serious offense and the taking of funds due a law firm is no less a serious offense than the conversion of client funds. The Board stated that after a review of the nature of the misconduct and the mitigating factors in the context of the case law cited, the Board was persuaded that a short suspension of three months was appropriate. The Supreme Court concurred and the lawyer was suspended for three months.

48. In *Office of Disciplinary Counsel v. Staropoli*, 69 Pa. D. & C.4th 116 (2004), the lawyer was suspended for one year retroactive to his transfer to inactive status. While an employee of a law firm, the lawyer converted $3,000 in legal fees owed to the law firm from a $9,000 settlement. He did not notify the law firm that he had settled the case and received the settlement check. He deposited the check proceeds into his personal account and gave the client her share of the proceeds. He then made misrepresentations in three letters to the law firm regarding his actions.

In its Report, the Disciplinary Board stated that the lawyer offered no explanation for his actions. The lawyer did not have a disciplinary history, presented favorable character witnesses, expressed remorse for his misconduct, and made restitution to the law firm with interest. He also reported his misconduct to the Disciplinary Board, cooperated with the Office of Disciplinary Counsel, and took action to have himself transferred to inactive status.

The Board found that the lawyer showed a significant lack of judgment in his actions and deserved a suspension but did not perceive that he was so unfit that he had to petition for reinstatement to prove his fitness subsequent to the suspension. The Board found that the lawyer did not pose a threat to clients or the general public. The Board recommended that the lawyer be suspended for six months. The Supreme Court suspended the lawyer for one year retroactive to

when the lawyer was placed on inactive status.

49. In *Office of Disciplinary Counsel v. LeBon*, 568 Pa. 99, 792 A.2d 1247 (2002) (an unreported case), the lawyer was suspended for one year. While employed by a law firm, the lawyer had a client send him a check, payable to the lawyer, for almost $6,000 for legal fees and costs. The lawyer deposited the check proceeds into his personal account, instead of the law firm's account, and used the funds for his personal expenses. When the lawyer was confronted by three partners, he misrepresented that he had deposited the check into his personal account because he was late on a mortgage payment.

The lawyer testified he had no explanation why he requested the check be made payable to him, although he did testify that he was angry with the law firm. In its Report, the Board stated that the lawyer made restitution, was remorseful, and offered impressive character testimony. The lawyer had no prior discipline and admitted that he should be suspended from the practice of law as a result of his misconduct.

The Board noted that the Supreme Court had imposed a wide range of suspension on lawyers who had converted money from a client or law firm and recommended that the lawyer be suspended for one year. The Board stated that it reached this conclusion after carefully reviewing the implications of the Supreme Court's Order in *Office of Disciplinary Counsel v. Fry*, No. 49 DB 1998, No. 668 Disciplinary Docket No. 3 (2001) (an unreported case), discussed hereafter, in which the Board recommended a six-month suspension and the Supreme Court suspended the lawyer for a year and a day. The Supreme Court concurred and suspended the lawyer for one year.

50. In *Office of Disciplinary Counsel v. Geronimo*, 551 Pa. 197, 709 A.2d 899 (1998) (an unreported case), the lawyer was suspended for one year and one day retroactive to when the lawyer was placed on voluntary inactive status. While a salaried employee of a law firm, the lawyer diverted to himself and converted to his own use a portion of the fees he had collected on behalf of the law firm from about November 1994 through approximately January 1996. In its Report, the Disciplinary Board stated that the record did not indicate if the lawyer engaged in this misconduct every time he received cash or checks payable to him nor did it indicate the exact amount pocketed by the lawyer.

The Board found as mitigation that the attorney admitted his actions to the law firm, reported himself to the Disciplinary Board, and resigned from the firm. He also cooperated with the Office of Disciplinary Counsel by stipulating to what had occurred and waiving the filing of a petition for discipline, paid the $53,000 figure arrived at by the law firm for restitution (which was *not* based upon the specific amount misappropriated), and was voluntarily placed on inactive status. In addition, character witnesses testified at the hearing and wrote letters to the Hearing Committee concerning his reputation within the community.

The Disciplinary Board cited other disciplinary cases and the mitigating circumstances and recommended that the lawyer be suspended for one year and one day retroactive to when the lawyer went on inactive status. The Supreme Court concurred with that recommendation.

51. In *Office of Disciplinary Counsel v. Fry, supra.*, the lawyer was suspended for one year and one day. While a partner of a law firm, the lawyer misappropriated funds belonging to the law firm in six separate transactions over a period of about four months. The lawyer participated in the settlement of commercial transactions. His law firm was to receive its fee at the closings. On three occasions, the lawyer took checks payable to the law firm and deposited the proceeds into his own account. On the other three occasions, the lawyer arranged for the fee check to be made payable to him and then deposited the proceeds into his personal account.

In its Report, the Disciplinary Board found that the lawyer misappropriated approximately $31,500, did not notify the law firm of his receipt of the funds and used the funds for his own personal purposes. The Board also found that the lawyer initially misrepre-

sented to the law partners how much money he had misappropriated, as he did not·mention the three checks made payable to himself. The lawyer eventually made full restitution.

The Board cited other disciplinary cases and stated that the Hearing Committee's recommendation for a six-month suspension fell at the lowest end of discipline for this type of offense. The Board stated that in light of the lawyer's cooperation throughout these proceedings and his years of reputable practice, the Board was reluctant to ignore the recommendation of an experienced Hearing Committee, especially where the Office of Disciplinary Counsel had not advocated any higher level of discipline. The Board concluded that the lawyer's conduct was an aberrant reaction to aberrant circumstances which were unlikely to be repeated and adopted the recommendation of the Hearing Committee. The Supreme Court did not concur with the Board's recommendation and ordered that the lawyer be suspended for one year and one day.

52. In *Office of Disciplinary Counsel v. Atlas*, 68 Pa. D. & C.4th 148 (2004), the lawyer was suspended for three years. Over 44 months the lawyer converted and commingled fiduciary funds, misrepresented her receipt of fiduciary funds, and engaged in a series of false certifications on her attorney annual fee forms. She admitted misappropriating approximately $35,000 in fiduciary funds belonging to another lawyer.

In its Report, the Disciplinary Board recommended that a three-year suspension was appropriate, in part, because the lawyer had made no restitution of funds and the only mitigating factors were her lack of prior discipline and her efforts at achieving and maintaining sobriety. The Supreme Court concurred with that recommendation.

53. In *In re Anonymous* No. 32 DB 1989, 13 Pa. D. & C.4th 478 (1992), the lawyer was suspended for three years. From January 1984 until August 1987, the lawyer commingled, converted and otherwise misused for his own use approximately $7,500 in fees intended for and belonging to the law firm

where he was employed as a non-shareholder associate.

In its Report, the Disciplinary Board found that the lawyer produced evidence that his personality disorder was a factor in causing his admitted egregious misconduct. The Board considered the mitigating factors of the lawyer's youth, his lack of a prior disciplinary record, his cooperation with the Office of Disciplinary Counsel, and his making restitution in full. The Board stated that in addition the lawyer has sought and successfully undergone psychiatric counseling. Two doctors testified that they did not anticipate any recurrence of his misconduct and they both expressed optimism about his progress in rehabilitation. Neither psychiatrist characterized the lawyer's misconduct as motivated by dishonesty, a quality which the Board said would negate his fitness to practice law. The Board recommended that the lawyer be suspended for three years. The Supreme Court concurred with that recommendation.

WHEREFORE, Petitioner and Respondent respectfully request that:

(a) Pursuant to Rule 215(e) and 215(g), Pa.R.D.E., the three-member panel of the Disciplinary Board review and approve the above Joint Petition In Support Of Discipline On Consent and file its recommendation with the Supreme of Pennsylvania in which it is recommended that the Supreme Court enter an Order:

(i) Suspending Respondent from the practice of law for a period of six months;

(ii) Directing Respondent to make restitution of $1,733 to the law firm of Douglas & Joseph and return the Sewinsky file to the law firm within six months of the date of the Order; and

(iii) Directing Respondent to comply with all the provisions of Rule 217, Pa. R.D.E.

(b) Pursuant to Rule 215(i), the three-member panel of the Disciplinary Board order Respondent to pay the necessary expenses incurred in the investigation and prosecution of this matter as a condition to the grant of the Petition and that. all expenses be paid by Respondent before the

imposition of discipline under Rule 215(g), Pa.R.D.E.

Respectfully submitted,

OFFICE OF DISCIPLINARY COUNSEL

PAUL J. KILLION

CHIEF DISCIPLINARY COUNSEL

/s/ Mark G. Weitzman
Mark G. Weitzman
Disciplinary Counsel

and

/s/ Timothy John Blatt
Timothy John Blatt
Respondent

## VERIFICATION

The statements contained in the foregoing Joint Petition In Support Of Discipline On Consent Under Rule 215(d), Pa.R.D.E. are true and correct to the best of our knowledge or information and belief and are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

7/5/05
Date

/s/ Mark G. Weitzman
Mark G. Weitzman
Disciplinary Counsel

6-23-05
Date

/s/ Timothy John Blatt
Timothy John Blatt
Respondent

## AFFIDAVIT UNDER RULE 215(d), Pa.R.D.E.

Respondent, Timothy John Blatt, hereby states that he consents to the imposition of a suspension from the practice of law for a period of six months as jointly recommended by Petitioner, Office of Disciplinary Counsel, and Respondent in the Joint Petition In Support Of Discipline On Consent and further states that:

1. His consent is freely and voluntarily rendered; he is not being subjected to coercion or duress; he is fully aware of the implications of submitting the consent; and he has not consulted with counsel in connection with the decision to consent to discipline;

2. He is aware that there is presently pending a proceeding involving allegations that he has been guilty of misconduct as set forth in the Joint Petition;

3. He acknowledges that the material facts set forth in the Joint Petition are true; and,

4. He consents because he knows that if charges are continued to be prosecuted in the pending proceeding, he could not successfully defend against them.

/s/ Timothy Blatt
Timothy John Blatt
Respondent

IN THE SUPREME COURT
OF PENNSYLVANIA

Office of Disciplinary Counsel, Petitioner

v.

Timothy John Blatt, Respondent

No. 1058 Disciplinary Docket
No. 3 Supreme Court

No. 54 DB 2005 - Disciplinary Board

Attorney Registration No. 56202

(Out of State)

## ORDER

PER CURIAM:

AND NOW, this 8th day of September, 2005, upon consideration of the Recommendation of the Three–Member Panel of the Disciplinary Board dated July 29, 2005, the Joint Petition in Support of Discipline on Consent is hereby granted pursuant to Rule 215(g), Pa.R.D.E., and it is

ORDERED that Timothy John Blatt is suspended on consent from the Bar of this Commonwealth for a period of six months, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

Respondent is further directed to make restitution of $1,733.00 to the law firm of Douglas & Joseph and return the Sewinsky

file to the law firm within six months from the date of this Order.

It is further ORDERED that respondent shall pay costs, if any, to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.